**IN THE COURT OF APPEALS OF IOWA**

No. 24-1751
Filed October 29, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ALEC RAY JONES,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Webster County, John J. Haney,

Judge.

        A defendant appeals his conviction for first-degree murder.  **AFFIRMED.**

        Martha J. Lucey, State Appellate Defender, and Josh Irwin, Assistant

Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Adam Kenworthy, Assistant Attorney

General, for appellee.

        Considered without oral argument by Schumacher, P.J., and Badding and

Langholz, JJ.

**SCHUMACHER, Presiding Judge.**

Alec Jones appeals his conviction for first-degree murder, claiming the evidence was insufficient to establish that the shooting of his father was not justified. Upon our review, we affirm.

## I.	Background Facts and Proceedings

Jones lived at home in Fort Dodge with his brother, Nathan; their mother, Shannon; their father, Dennis; and Dennis's girlfriend. There was a history of domestic violence in the home between Dennis and Shannon. On the evening of April 25, 2024, Jones shot Dennis inside the family's home. Dennis died as a result.

The State charged Jones with murder in the first degree. Following a seven-day trial, the jury found Jones guilty as charged. Jones appeals, challenging the sufficiency of the evidence supporting his conviction. Jones does not dispute he shot Dennis. Instead, Jones claims the State did not prove he acted without justification. Additional facts relevant to Jones's claim will be set forth below.

## II.	Standard of Review

We review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Cook*, 996 N.W.2d 703, 708 (Iowa 2023). We uphold a jury verdict supported by substantial evidence. *Id.* "In conducting that review, we are highly deferential to the jury's verdict. The jury's verdict binds this court if the verdict is supported by substantial evidence." *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021). Evidence is substantial if it could convince a rational factfinder of the defendant's guilt beyond a reasonable doubt. *Cook*, 996 N.W.2d at 708. In assessing the sufficiency of the evidence, we view the evidence, including

legitimate inferences and presumptions that can be fairly and reasonably deduced from it, in the light most favorable to the State. *Id.*

## III.     Analysis

Jones claims "[t]he State failed to prove beyond a reasonable doubt that [he] was not justified in using deadly force against Dennis." We examine Jones's sufficiency challenge to his justification defense under the instructions given to the jury. *State v. Duque*, No. 22-1041, 2023 WL 7014135, at *3 (Iowa Ct. App. Oct. 25, 2023). Here, the district court gave the jury a marshaling instruction for murder in the first degree that required the State to prove:

> 1. On or about April 25, 2024, Alec Ray Jones shot Dennis Ray Jones Jr.
> 2. Dennis Ray Jones Jr. died as a result of those gunshot wounds.
> 3. Alec Ray Jones acted with malice aforethought.
> 4. Alec Ray Jones acted willfully, deliberately, premeditatedly and with a specific intent to kill Dennis Ray Jones Jr.

The jury was further instructed as follows:

> Alec Ray Jones claims he was justified in using reasonable force to prevent injury to himself.
> Alec Ray Jones was justified in using reasonable force if he reasonably believed that such force was necessary to defend himself from any actual or imminent use of unlawful force that he reasonably believed was being or would be imminently perpetrated by Dennis Ray Jones Jr.
> Reasonable force is only the amount of force a reasonable person would find necessary to use under the circumstances to prevent death or injury. If in the defendant's mind the danger was actual, real, imminent, or unavoidable, even if the defendant was wrong in estimating it or the force necessary to repel it, the force was justified if the defendant had a reasonable basis for his belief and responded reasonably to that belief. It is not necessary that there was actual danger, but the defendant must have acted in an honest and sincere belief that the danger actually existed. Apparent danger with the defendant's knowledge that no real danger existed is no excuse for using force.

Reasonable force can include deadly force if it is reasonable to believe that such force is necessary to resist a like force or threat or avoid injury or risk to one's life or safety. The State must prove beyond a reasonable doubt that the defendant's use of force was not justified.

According to Jones, "[t]he evidence established Dennis was an aggressive, violent man." Jones further claims the evidence showed that Dennis "had a very high amount of methamphetamine in his system," which can make people "act violently, aggressively, and irrationally, and could be restless, confused, or experience hallucinations." On that point, the jury was instructed:

> Evidence has been received concerning Dennis Ray Jones Jr.'s character for being quarrelsome and violent in an effort to show that Dennis Ray Jones Jr. was a quarrelsome and violent person.
> This evidence bears on whether Dennis Ray Jones Jr. was the aggressor at the time Alec Ray Jones fired the gunshots and also whether Alec Ray Jones acted under circumstances which would have caused a reasonable person to be afraid of being injured or killed by Dennis Ray Jones Jr.
> A deliberate and unprovoked use of force was not justified merely if Dennis Ray Jones Jr. was a quarrelsome and violent person. If Alec Ray Jones used force in revenge or only to punish Dennis Ray Jones Jr., Alec Ray Jones's act was not justified.

The jury was further instructed:

> After using deadly force, Alec Ray Jones had the following duties:
> 1. To not intentionally destroy, alter, conceal, or disguise physical evidence relating to Alec Ray Jones's use of deadly force;
> 2. To not intentionally intimidate a witness into refusing to cooperate with an investigation of Alec Ray Jones's use of deadly force; and
> 3. To not intentionally induce another person to alter testimony about Alec Ray Jones's use of deadly force.
> You may, but are not required to consider whether Alec Ray Jones complied with these duties when deciding whether deadly force was justified.

From the evidence presented at trial, a reasonable juror could have found the following. On the evening of April 25, Nathan was out with his girlfriend,

Makayla, and his friend, Aiden, at a nearby bar when Jones messaged him and asked him to come home.  The following exchange occurred:

> JONES: Either way people gon be dead
> NATHAN: Wdym? . . .  What happened?
> JONES: You know what I mean
> NATHAN: I mean sorta, I know it's about the crackheads but like what happened
> JONES: So are you gonna get here or not

Nathan didn't have a ride, so Jones went to pick him up from the bar.  Jones "seemed angry."  Before leaving with Jones, Nathan told Aiden "that he would be back."  A short time later, Nathan messaged Aiden that he needed to be picked up from his house.  Makayla believed there would be a confrontation at the Jones residence.  Aiden and Makayla left the bar to pick Nathan up from the Jones residence, where they parked across the street.  As they waited in the car, Aiden heard gunshots coming from inside the Jones residence.  Jones and Nathan came "running out," got into the backseat of Aiden's car, and Jones told Aiden to drive.

They circled around the block, and Jones told Aiden to "go back" because they needed to move "a body."  Jones instructed Aiden to back his car into the driveway.  Aiden went inside the house and saw Dennis lying dead on the kitchen floor with gunshot wounds to his chest and head.  Nathan and Aiden helped Jones load Dennis's body into the trunk of Aiden's car.  First, they drove to the river for Jones to "get rid of the gun," which was described as a 9mm handgun with a flashlight.  Jones also disposed of a cell phone and black latex gloves.  Jones then directed Aiden to drive to a field in rural Webster County, where they left Dennis's body in a ditch and covered it with a rug and a car rotor.

The group then went back to the bar, where Jones told Aiden to "[k]eep quiet" "[a]bout the body." Jones told Aiden "he had to do it." After the bar closed, the group went back to the residence, where they picked up spent casings, patched and painted a bullet hole in the wall, and cleaned blood off the floor.

The next day, a mail carrier discovered Dennis's body and called the police. A medical examiner determined Dennis's cause of death to be gunshot wounds to his forehead, neck, and torso. Police executed a search warrant at the Jones residence later that evening. Jones, Nathan, and Shannon were home when the police arrived. Inside, Lieutenant Zachary Stanley noted a rug missing in the kitchen, an outdoor hose had recently been used, multiple bullet holes in the kitchen that had just been filled and repaired with spackle and fresh paint, and towels were in the washing machine.

Police learned that Dennis called 911 just before the murder to request an officer to "stop over" because his "boys are trying to get [him]." Dennis told the dispatcher, "I think one of 'em is going to try to shoot me actually, I don't know. But they're sneaking around with black—with their gloves and shit on now. I'm sitting out here in the garage." Minutes later, at 11:31 p.m., Dennis texted his daughter: "i think alec and [n]athan is gunna try to [d]o something to me." Around that same time, video from a camera in Dennis's bedroom showed Jones in the house looking for Dennis, and Jones messaged Nathan to report "Hes right inside the door." When Dennis left his bedroom the final time at 11:33 p.m., he "had a cigarette in his mouth," a phone in one hand, and nothing in his other hand. Seconds later, Jones shot Dennis.

Police interviewed Jones. Initially, he denied knowing anything about what happened to Dennis. Jones stated he saw Dennis arguing with Shannon, then he went to the bar with Nathan; when they came home, he noticed the house was in disarray and went to bed. When police told Jones that Dennis was dead, he continued to deny involvement and stated he "last touched a gun" "a couple years ago." Jones's story changed several more times. Eventually, he admitted he shot Dennis because Dennis hit his mom and taunted him about it. Later in the interview—for the first time—Jones stated he shot Dennis when Dennis "came storming out of the garage" toward him carrying a hammer.

On appeal, Jones acknowledges he "initially denied involvement" in Dennis's murder, but he maintains that he eventually confessed he killed Dennis. Jones points out that he told police that Dennis "confronted and advanced on [him] carrying a hammer." He also relies on evidence that he was "crying," regretful, and "repeatedly saying he was sorry" after the shooting. In sum, Jones claims:

> While the evidence suggested tension and even anger between Jones and Dennis, and a disorganized attempt to dispose of evidence in the aftermath of the shooting, nothing contradicts Jones's assertion of what actually happened in the moments leading up to that event. Substantial evidence does not establish that Jones was not justified in using deadly force to defend himself.

We view Jones's challenge as "a request for us to reweigh the evidence and substitute his view of the facts for that of the jury—a task outside of our authority." *See State v. Diaz*, No. 24-0496, 2025 WL 1704324, at *2 (Iowa Ct. App. June 18, 2025). Although Jones's story to police eventually morphed into a statement that Dennis "picked up a hammer and came running at [him] with it," a rational juror could have rejected Jones's contention and found beyond a

reasonable doubt that Jones acted without justification. *See State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006) ("The function of the jury is to weigh the evidence and place credibility where it belongs." (internal quotation marks and citation omitted)).

Moreover, "[t]he fear alleged by [Jones] was not temporally linked to any event immediately preceding the homicide." *See State v. Erlbacher*, No. 22-0299, 2023 WL 8447939, at *4 (Iowa Ct. App. Dec. 6, 2023). Indeed, Jones told police that before the murder, he and Nathan declared, "This shit's gotta stop, him beating on Mom." Jones picked Nathan up from the bar, and when they got home, Jones took time to retrieve black latex gloves from a box in the garage before he began searching the house for Dennis. Jones messaged Nathan when he located Dennis, and seconds later, he shot him. Jones told police that Dennis was approximately "twelve feet" away in the kitchen, "looking right at [him]," when he fired the shots. Based on the evidence, the jury could have found that an encounter took place at Jones's home that did not involve Jones being required to use deadly force against Dennis to "avoid injury or risk to [his] life or safety." Substantial evidence supports the jury's finding.

Accordingly, we affirm Jones's conviction for first-degree murder.

**AFFIRMED.**